IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIO J. ARCHE GONZALEZ,

    Plaintiff,

    v.

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 13-1899 (CVR)

## OPINION AND ORDER

### INTRODUCTION

Plaintiff Mario J. Arche González ("Plaintiff") filed the present case to obtain judicial review of the final decision of the Defendant, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), which denied his application for disability benefits. The Commissioner ultimately found that Plaintiff was not disabled prior to his last insured date of March 31, 2014. (Docket No. 1).[1] On May 1, 2014, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 5 and 6). The next day, on May 2, 2014, Plaintiff filed a consent to proceed before a Magistrate Judge. (Docket No. 8).[2] On September 4, 2014, Plaintiff filed his memorandum of law (Docket No. 18) and on October 9, 2014, the Commissioner filed its memorandum of law. (Docket No. 19).

After careful review of the record before it, the Court REMANDS the present case to the Administrative Law Judge ("ALJ") for further proceedings, in order to perform a

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

physical and mental examination and re-evaluate the totality of the evidence and Plaintiff's total ability to work in light of his combined mental and physical residual functional capacity.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On June 12, 2012, Plaintiff, a former Army Infantryman, filed an application for disability benefits with an alleged onset date of disability of March 1, 2009. Plaintiff met the insured status requirement up to March 31, 2014. (Tr. p. 14).

The application was initially denied, as was the reconsideration. (Tr. pp. 71-77). Plaintiff then requested an administrative hearing, which was held on August 6, 2013. Plaintiff testified regarding his alleged disabilities. (Tr. pp. 29-65). The presiding ALJ determined that Plaintiff had not engaged in any substantial gainful activity since his alleged onset date of March 1, 2009 until his last insured date, and that he had the following severe impairments: post-traumatic stress disorder, depression and a substance abuse disorder. (Tr. p. 16). She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1526). (Id.). Although the ALJ found Plaintiff could not perform any of his previous jobs, she found he could perform a limited range of unskilled work, simple repetitive tasks, with an ability for sustained concentration for two (2) hour periods with occasional contact with the public, and that there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. p 23, 61). The Appeals Council subsequently denied Plaintiff's

request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 1-5).

Plaintiff objects to the ALJ's final decision, alleging that she failed to correctly consider treating and psychiatric consultant's analysis, and therefore, failed to correctly reflect his limitations in the hypothetical question presented to the vocational expert. Therefore, Plaintiff argues the ALJ's decision is not based on substantial evidence. In turn, the Commissioner avers the ALJ's decision was based on substantial evidence, and must therefore be affirmed.

## STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act (the "Act"). See, Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See, §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the claimant's residual functional capacity, as well as his/her age, education, and work experience.  The claimant would be entitled to disability benefits only if he/she is not able to perform any other work. §§ 404.1520(f).

In the case at bar, the ALJ found at step 4 that Plaintiff was unable to perform any of his past jobs as an Infantry member, fish cleaner, fish cook or cashier. (Tr. p. 22)[3].  At step 5, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, he could perform other jobs which existed in significant numbers in the national economy, primarily that of a janitor, post-manufacture labeler and missing parts inspector. (Tr. p. 23).

**LEGAL ANALYSIS**

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See, Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by "substantial evidence", 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater,  172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Ortíz v. Sec'y

---

[3] Plaintiff testified he was also an stocked inventory, yet the ALJ did not mention this in her findings of fact. (Tr. p. 56).

of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The term "substantial evidence" has been defined as "more than a mere scintilla." It means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

More importantly, the Court must avoid reinterpreting the evidence or substituting its own judgment for that of the Commissioner. Colón v. Sec'y of Health and Human Servs, 877 F.2d 148, 153 (1st Cir.1989). "The findings of the [Commissioner] are conclusive if supported by substantial evidence and should be upheld even in those cases in which the reviewing Court, had it heard the same evidence de novo might have found otherwise." Lizotte v. S.H.H.S, 654 F.2d 127, 128 (1st Cir. 1981). However, although the Court cannot second-guess the ALJ's credibility findings, the Court does have the responsibility of making certain that the complete, and in this instance, correct record has been considered by the ALJ.

The case at bar shows a remarkable psychiatric history, with multiple hospitalizations and suicide watches for Plaintiff. Looking at the record to the relevant information applicable to the analysis the Court must perform, there are two Residual Functional Capacity Assessments ("RFC") performed by consulting physicians, Dr. Janice Calderón and Dr. Zulma Nieves, one at the initial level and another on reconsideration. (Tr. pp. 431-442 and 444-455). There is also one consultive evaluation by Dr. Alberto Rodríguez ("Dr. Rodríguez"). (Tr. p. 106). Unfortunately for the Commissioner, the two RFC's are faulty and the ALJ's final determination of non-disability is not supported by remaining evidence on the record, much less substantial evidence.

Plaintiff is a veteran of the armed forces, having served from 2000 through 2007 as an Infantryman in the Iraqi War, and then in Egypt. Since Plaintiff's return from his military deployment, he has had trouble adjusting to daily life, incurring in excessive drinking and drug abuse which led to a depression and a divorce. (Tr. p. 47, 49 and 51-53). Throughout this time, Plaintiff was treated at the Veteran's Administration ("VA") for a recurrent major depression and anger management, cocaine and alcohol dependency which has consisted of individual and group therapy, and which led to at least four (4) hospitalizations from 2011 through 2013, most of them with a suicide watch note. Plaintiff was also diagnosed with post-traumatic stress disorder-like symptoms and was found 80% disabled by the VA (with 70% of that determination attributed to his depressive disorder). (Tr. p. 290). The Court finds the hospitalizations are key to this case. As such, the Court analyzes each of them in turn.

In November, 2011, Plaintiff was admitted to the VA hospital, and although oriented in space and time, he had poor grooming and fair hygiene. At that time, Plaintiff reported suicidal intentions, with a plan to either overdose or letting himself get run over by a car, and was thus placed on suicide watch. (Tr. p. 657 and 800). He was not responding to internal stimuli, and was sad, with restricted affect, and poor judgment and insight. He was admitted with a GAF of 25.[4] He was discharged six (6) days later with a much improved

---

[4] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work). A score of 21 - 30 demonstrates behavior is considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends).

GAF of 60, to undergo a partial hospitalization at San Juan Capestrano Hospital the very next day. Id. During the month of December 2011, there are multiple notices in his record indicating that Plaintiff was a possible suicide risk. (Tr. p. 136-138).

On August 27, 2012, Plaintiff was again hospitalized at the VA Intensive Care Unit due to exacerbation of symptoms with self harm ideas of overdosing on medication. (Tr. p. 238). Although he was alert in time and place, he did have intermittent death wishes, and poor insight and judgment. Plaintiff was placed on high risk of suicide and was admitted with a GAF of 35 and discharged four (4) days later with a GAF of 60. Id. Upon discharge, Plaintiff continued outpatient follow-up appointments and a day program at San Juan Capestrano Hospital. (Tr. p. 796). Indeed, this picture resembles a lot his situation of a few months before, in November, 2011.

Shortly thereafter, on September 6, 2012, Plaintiff began the partial program at San Juan Capestrano Hospital. In spite of having just been discharged from a hospitalization just days before, Dr. Ricardo Fumero ("Dr. Fumero") evaluated Plaintiff upon arrival and found him to have a recurrent major depression, and with dulled restricted affect, hopelessness and death thoughts. (Tr. p. 113 and 761). Dr. Fumero noted that Plaintiff had tried to commit suicide in 2004 by swallowing pills, and he displayed anger towards himself and others. (Tr. p. 114 and 762). Dr. Fumero diagnosed Plaintiff with a GAF of 40 at that time.

After that, Plaintiff had a relapse related to his drug and alcohol problem during the holiday season of 2012. At that time, Plaintiff was again treated for cocaine and alcohol

dependency. In February 2013, during a follow up visit to the VA, Plaintiff was diagnosed with a GAF of 55. (Tr. p. 1056).

In July 2013, Plaintiff again displayed suicidal tendencies and was again hospitalized at Capestrano Hospital, even though in a June (one month before) visit, he had presented a GAF of 58. (Tr. p. 989). Plaintiff was placed once more on a high risk suicide watch. (Tr. p. 953).

In spite of these multiple hospitalizations in such a short span of time, both RFC's failed to mention them and instead state the opposite - that there were no psychiatric hospitalizations. Even though they were all of rather short duration, the fact that Plaintiff was placed on suicide watch during them is telling. Clearly, this is a factor which needs to be considered when performing a mental RFC, and it was not.

Regarding consulting evaluations, the record only reflects one, performed by Dr. Rodríguez on September 13, 2012. Dr. Rodríguez found Plaintiff obese, with high cholesterol and high triglycerides, high blood-pressure, a left eye injury and depressed. Dr. Rodríguez found Plaintiff could perform personal hygiene and get dressed, but was restless, nervous, anguished depressed and with psychomotor retardation. (Tr. p. 108). Although Dr. Rodríguez noted Plaintiff did not have suicidal ideas or perceptual disorders at that time, he still found his attention and concentration poor, that he was easily distracted and could not follow the backwards sequence of the month. (Tr. p. 109). Dr. Rodríguez found Plaintiff unable to handle his own funds and his prognosis poor, as he was having post-traumatic stress disorder like symptoms (nightmares of combat scenes where soldiers were wounded and the like). (Tr. p. 106). Surprisingly, the first RFC performed was dated

twelve (12) days after that, and shows markedly different results, concluding that Plaintiff was able to concentrate for at least two (2) hour intervals.

The Court now turns to the two (2) RFC's performed. For starters, in both of them, the consulting physicians act as "judge and jury" when they evaluate Plaintiff, assess the vocational factors, and then erroneously, both find that Plaintiff was capable of performing his past work as a cashier. Then, they make a conclusive finding that Plaintiff was "not disabled." (Tr. p. 431-442 and 444-455).

It has been clearly established that in a Social Security determination, each party has its special role in the process - after the physicians determine the extent of a claimant's condition, the ALJ then examines the medical evidence, rules on credibility issues, and presents a hypothetical with claimant's condition, which a vocational expert then transforms into available jobs that the claimant can perform. While an ALJ cannot act or make a disability determination without the required relevant medical information, neither can a doctor make a disability or a vocational determination. In the case at bar, the doctors in both RFC's, which are nearly identical, did just that.

20 CFR §404-1527 (d) makes is abundantly clear what each party's responsibilities are. It states as follows:

> (d) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you

Mario J. Arche González v. Acting Commissioner of Social Security
Civil No. 13-1899 (CVR)
Opinion and Order
Page 11

> meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.
> (3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section.

To the extent the ALJ relied on these findings and conclusions, it was in error. Particularly, the ALJ concluded that Plaintiff was able to maintain concentration for two (2) hour intervals because the RFC's so found. In fact, the vocational expert was quite clear that, if Plaintiff was unable to maintain concentration for a two (2) hour time span, coupled with his other ailments, he would not be able to fulfill the expectations or goals of *any* existing job in the workforce. (Tr. p. 62).

Compounding this problem is the fact that both RFC's contain incorrect information regarding Plaintiff's treatment history, which is essential for the analysis performed by the consulting physician. For instance, both RFC's state there was no evidence of psychiatric hospitalizations, when the record clearly belies this statement. (Tr. p. 436 and 453). And, in spite of the rather stark hospitalization record in such a short time period, coupled with

the suicidal tendencies on the record, the RFC's made barely after Plaintiff was discharged from one of these hospital stays found Plaintiff not significantly limited in most areas.

This Court has found that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Varley v. Secretary of Health & Human Services, 820 F.2d 777, 779 (6th Cir. 1987). "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)) *see also* Tennant v. Schweiker, 682 F.2d 707, 711 (8th Cir.1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts … should precisely set out the claimant's particular physical and mental impairments.").

In the case at bar, the RFC contained incorrect data regarding Plaintiff's history, particularly the multiple hospitalizations. Furthermore, the RFC's conclusion that Dr. Rodríguez' assessment suggests "moderate severity" cannot be reconciled with his report that the prognosis was poor, that Plaintiff could not handle funds and he had poor attention and concentration. These incorrect facts led the ALJ to pose her questions to the vocational expert using incorrect data. Therefore, because the vocational expert's testimony was based on an inconsistent and unsubstantiated RFC assessment, it cannot form the basis of the ALJ's determination at step five. See Padilla v. Barnhart, 186 Fed.Appx. 19, 21 (1st Cir. 2006) ("If a [vocation expert's] testimony is to have any probative value, the hypothetical

questions posed to the [vocational expert] must contain the relevant facts."); Morales Colón v. Comm'r of Soc. Sec., 245 F.Supp.2d 395, 400 (D.P.R. 2003) ("With a proper RFC assessment, the medical evidence of record could support a possible finding of plaintiff being disabled or of not being disabled."). Without a correct RFC, and without the correct limitations being posed to the vocational expert, the ALJ did not have substantial evidence at her disposal on which to predicate a finding of substantial gainful employment that Plaintiff could perform in the national economy. Even worse, without the faulty RFC's, the ALJ only had Dr. Rodríguez' consulting opinion to consider, which points to a much more severe condition than what the ALJ found.

Further compounding this problem is the fact that Plaintiff is considered morbidly obese by most standards (his body mass index fluctuated between 39 and 41) (Tr. p. 1002 and 1040) yet the ALJ found this to be a "non severe impairment" and that the record did not reveal "significant limitations of functions" stemming from that condition. (Tr. p. 16). It has been well established that, in determining disability, an ALJ must consider the *combined* effects of the applicant's impairments. A regulation of the Social Security Administration, 20 C.F.R. § 404.1523, states that "we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." With specific reference to obesity, see Social Security Administration, SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57859, 57861-63 (Sept. 12, 2002), and the criticism in Christopher E. Pashler, "Mirror, Mirror on the Wall: Stigma and Denial in Social Security Disability Hearings," 43 University of Memphis Law Review 419 (2012), of the agency's

handling of obesity and how a claimant's chances at being granted disability can be hurt by their failure to speak up regarding their difficulties with their obesity.

The ALJ acknowledged Plaintiff's obesity, but did not discuss its bearing on his ability to work. It is important to remember that Plaintiff is morbidly obese. This condition may make it difficult for him to perform the jobs that the vocational expert mentioned, since they require his legs to support his great weight, and there are entries in the record indicating foot and back pain, which should have been considered. (Tr. p. 188). The Court believes the likely difficulties that morbidly obese persons face, even in doing work, are sufficiently obvious to have required the ALJ to instruct the consulting physician to perform a physical RFC and to consider the potential effect of Plaintiff's obesity on his ability to work.

Finally, while not having been diagnosed with full PTSD, Plaintiff underwent an evaluation for said disorder in November, 21, 2012, and was found to have depressed mood, anxiety, chronic sleep impairment, mild memory loss, flattened affect, motivational and mood disturbances, difficulty in adapting to stressful circumstances, including work or work-like settings, irritability without violence (although the record does show previous anger issues), a changed eating pattern, and back and neck pain with poor judgment and insight. (Tr. p. 188).

In sum, what the record in the present case shows is a morbidly obese veteran who has been clinically diagnosed with a recurrent, major depression on multiple occasions, who has been found 80% disabled by the VA, who was further diagnosed with PTSD-like symptoms, was found unable to manage his funds by the agency's own consulting physician,

and who was hospitalized on multiple occasions in a short time period. While Plaintiff shows signs of improvement while under direct treatment, once outside ths hospital arena, that improvement seems to evaporate.

It is important to remember that, in evaluating whether Plaintiff satisfies the disability criteria, the Commissioner must evaluate his/her "ability to work on a sustained basis." 20 CFR § 404.1512(a); *see also* Lester v. Chater, 81 F.3d 821 (9th Cir. 1995). Occasional symptom-free periods, and even the sporadic ability to work, are not inconsistent with disability. See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir 2001)("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled").

This medical evidence of record could support a possible finding of Plaintiff not being disabled, simply because "the responsibility of weighing conflicting evidence, where reasonable minds could differ as to the outcome, fall on the Commissioner and his designee, the ALJ." Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). However, on this record, the Court cannot find that the ALJ's conclusion that Plaintiff can work is sustained by substantial evidence. The two RFC's are faulty and what is left are Dr. Rodríguez and Fumero's evaluations, and a lengthy treatment record by the VA, which does not support the ALJ's conclusions. Thus, remand is appropriate. On remand, the Commissioner must perform a proper physical and mental RFC, one which takes into account all of Plaintiff's ailments and medical history, including his morbid obesity, so the ALJ can then proceed to

Mario J. Arche González v. Acting Commissioner of Social Security
Civil No. 13-1899 (CVR)
Opinion and Order
Page 16

determine what, if any jobs, Plaintiff can perform in the national economy in light of his residual functional capacity.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds the Commissioner's decision is not based on substantial evidence, and therefore REMANDS the case so that a physical and mental RFCA may be ordered, and for the ALJ to then reconsider to what extent Plaintiff's ability to work may or may not be affected by the combination of his physical and mental limitations, in light of that new evidence.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of January 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE